Well, next, your argument in Elwood. May it please the court, Honorable Judge Fletcher, Honorable Judge Bremer, Honorable Judge Graber. My name is Patricia Berry, and I represent the appellant, Darla Elwood. Your Honor, I would only want to spend a few minutes, unless any of you have questions, and I'd like to save the bulk of my time for rebuttal. I'd simply like to reemphasize that the reports that were submitted by Boyle and the two social workers, or at least Ms. Wellman and then Ms. Dulles approving them, we allege were consistently and repeatedly false, and that they were in violation of the state due process standards. And at the time of the trial, I had made it clear that we objected, while not arguing specifically those rules of courts in In re Lucero, the gist of my position was that it violated due process standards. Nonetheless, they were consistently considered by the court, and at the time of the trial, they were admitted into evidence in order that placing us in the position of having to rebut them. Now, there are two issues that I think are very important. Was there a meeting of the minds? As Judge Barrett said, there weren't. But she had already found that there was concerted state action, or excuse me, a concerted action on the part of the nongovernmental actors and the governmental actors. And I guess the issue in part is whether you actually pled the meeting of the minds. My argument, Your Honor, is that we got a 40-page complaint in which I laid out exactly as far as we knew what had happened, and we adopted what Mr. Boyle argued, which was that the social workers came to him and said, I want you to do these reports for the obvious reason, we say, because besides his clear lack of qualifications, he was hired and paid for by Mr. Moran, who was obviously an interested party in pushing forward his agenda, that you didn't have to be a social worker to know that you were not going to get fair, unbalanced reports from Mr. Boyle for that precise reason. And that is precisely why they went to him. Plus, we had alleged that there was an earlier agreement between Mr. Boyle and Mr. Moran, that his job was primarily to produce reports that would put Darla Elwood in the worst light possible. And then, and that was in violation of the court order saying that he could not even be retained or hired by Mr. Moran without the knowledge and consent of the mother based on a prior family court order. But my position is what this court has held in Mendocino, which is that if you look at what the parties were doing, there could be no action taken unless there was this agreement as we've plotted in the case. In other words, the parties agreed that whatever their personal motivations were is that Darla Elwood would never regain custody. And from that, you would extrapolate that there was circumstantially a clear meeting of the mind. Counsel, it strikes me, though, that what's missing is the nexus. You've alleged things that theoretically could be true, and you've alleged a bad result. But what seems to me to be missing is the nexus. For example, let's suppose somebody runs into my car, and it's a 22-year-old male. And I know that the statistics are that that's the most negligent group. And so I can't just come to court and say, this person ran into my car, and because of statistics, I know that he's likely to have been negligent. I have to actually show it for that event. And I guess what is missing to me is anything other than sort of the end result, which was obviously not to your client's liking, and the fact that these actions took place. I guess I just don't see that middle piece. The reports were repeatedly relied upon in order to deny her continuing custody. We allege that she had completed the, excuse me, the reunification plan. And having completed that reunification plan successfully, in conjunction with the fact her own psychologist had said that the children should be returned to her immediately, and that he was appalled at the reports of Boyle. The nexus was that these reports, generated by Boyle and the social workers, were the continuing, caused the continuing deprivation of the return of custody. Well, didn't the state court system implicitly find that that these reports were not false, and by relying on them? And if that's the case, how could we possibly disagree with that as a factual finding? Well, because we alleged in a number of paragraphs that we were putting on evidence showing the falsity of the reports. In other words, the reports went in, I objected. I said they didn't meet the standard required by state due process. I didn't articulate, as I already indicated to your honors, and as I said in my pleading. However, they went into evidence, and they were considered the basis for continuing deprivation. Then we were allowed, under the rules of juvenile court, to put on a hearing in order to show that they were false. And what I did say was when- And the state court disagreed with you. No, they didn't disagree. What happened was they boarded the hearing, and so we never got to the point of showing, of going to a conclusion where a court would make findings. In other words, they would go in, and they would simply go in. There was never a hearing on the truth or falsity until I came into the case in May of 2001. At that point, we were so excited about the fact that we were putting on these witnesses, showing over and over again the repeated falsity of those reports. And then at that point, we have pled, those were our allegations, that when it became apparent that we were showing the falsity of the reports, at that point the hearing was aborted. Then, under Younger versus Harris, I was unable to mount the constitutional challenge because Referee Skiba says, well, you know, you're saying that we're all against you, and I really take that to task, and I resent it. Well, the point was, everybody was against her. And, I mean, the people that counted, the two fathers, clearly, the therapist, the supposed therapist, and again, we don't know his function. It was impossible to figure out his function other than just unremittingly producing these reports. So you have the falsified reports, or that is, we were showing or demonstrating the falsified reports. But there was never a finding by Referee Skiba on these reports themselves. They would just come in, she'd say okay, and then the, if you looked at any of the orders that we've asked to take judicial notice of, and it would like, it would just continue. Because the basis, as I've said, the basis for Darlisle would even be in court was dismissed within five months. And then, as I said, it became very problematic as to what was the purpose of these reports, other to, other than to ensure that she would never regain custody. Now, Kalina makes it very clear, and as, you know, Judge Rimer participated in the AMVAC decision in Miller versus GAMI. Filing false reports that continually deprived Darla Elwood on some inexplicable basis. I mean, for some reason, these reports would come in, the continuing situation would go on, and then finally there was an exit order. I come into the case, and then we begin the trial. We think we're going to win. I'm showing the falsified reports. They abort the hearing. Referee Skiba is very unhappy with us. We say we give up, and we take the exit order. And I'll save the one, one and a half minutes. All right, Mr. Deniston. Good morning, Your Honors. May it please the Court, Martin Deniston for the appellee, Robert Boyle. There are multiple grounds upon which this Court can uphold the decision of the trial court dismissing this action against Mr. Boyle. And I'd like to focus on four primary arguments in that regard, four primary points. First is the basis upon which the Court did dismiss the complaint, and that is there's no meeting of the minds between Mr. Boyle and the county social workers. The plaintiff in this case alleged that Mr. Boyle was retained by Mr. Morin in April of 1999. He wasn't retained by the county social workers. So his retention and his payment, according to the plaintiff, is not by a state actor. It's by a private individual. So there can't be any meeting of the minds there. The county social workers only began to use Mr. Boyle after the plaintiff was deprived of the custody of these children. There was a hearing in June of 1999. But her allegation is that thereafter, Boyle's reports influenced her ability to redeem custody. I understand that's her allegation, Your Honor. But at that June hearing, the Court ordered that the county social workers provide family reunification services. So their argument is, well, this conduct could not have taken place, but for a conspiracy, there's no other explanation. Well, there is an explanation, and that explanation is the Court, in June of 1999, ordered family reunification services for the minors. They were already being treated by Mr. Boyle at that time, so the county social workers discontinued to use who was already treating the children. What do you make of the fact that there was this statement or order from the juvenile court referees saying CSW and minors attorney are the only people that are to interview minors? What role does that allegation play? I can't comment. I don't know. I wasn't at the hearing, Your Honor, and I recognize that's in the record. But in the same order, it says that the county social workers are to provide family reunification services, and so that is the reason Mr. Boyle became involved with the county social workers, not because of some conspiracy. There's no meeting of the minds between the county social workers and Mr. Boyle. Well, I know that's, yeah, but we have to take all of the possible inferences in favor of the complaint in this procedural posture. And so I guess my question is, in view of that order saying that doesn't list Boyle as one of the people who may interview the minors, and the fact that he nevertheless did interview the minors, does that permit any inference of conspiracy in your view? I don't think it does permit any inference, because I don't think it's ever been pled that Mr. Boyle was even aware of that order. So, unless he was aware that he was not, there was an order by the court that says only certain people can interview these children. I don't know how he could be accused of having a meeting of minds to form a conspiracy with the county social workers. And there's been, it's never been pled that Mr. Boyle was aware of that order and nonetheless violated it. So, that's the first reason why this dismissal can be upheld. The second reason is the acts of Mr. Boyle that he's being accused of did not cause Ms. Elwood to be deprived of any constitutional rights. There were hearings on the merits regarding whether or not she could regain custody of her children. In particular, there was a hearing in January of 2000. At that hearing in January of 2000, Ms. Elwood was allowed to present evidence. She was sworn, she testified. Someone else on her behalf was sworn, they testified. You know, as I understand this case, we are looking only at the pleadings to see whether a 12B6 dismissal was appropriate. Is there anything else we're supposed to be looking at? Yes. We requested judicial notice of some court records from the juvenile court proceedings that show exactly what happened. And that, this is what I'm referring to right now. There was a, it's in our excerpts of the record, I think it's 31 through 33. There's an order that sets forth what happened at this January hearing on the merits. Plaintiff was sworn and testified. Another witness on her behalf was sworn and testified. They asked that the minors that Mr. Boyle was supposedly falsifying what they said, they were allowed to testify. They went in chambers and testified. It also seems to me that what you're talking about might be appropriate for, if this were a summary judgment. But all we're looking at are the pleadings, and are they adequate? And that's what you should be addressing. Okay, but I just want to point out, I did request judicial notice. And you are entitled to take judicial notice of court records at this stage, at a 12B6 motion. I think you can look at matters that you're entitled to take judicial notice of. You don't have to focus just upon what's in the pleadings. But I understand your point. Be that as it may, even if you focus just on the pleadings here, the Eldred was not deprived of her constitutional rights. She had hearings on the merits regarding her claims that she was entitled to regain custody of her children. Counsel, I was unable to determine whether there had been a state court ruling specifically on the question of whether these reports that are alleged to be false were or were not false. And opposing counsel says there was never a state court ruling, and I find it kind of hard to tell from the materials in front of us. Was there a ruling or not a ruling? I don't think there is anything in the record that indicates whether there was or there was not a ruling. Okay. And I obviously wasn't at the proceedings, so I can't represent to you what happened there. All the record does reflect was that the reports were admitted into evidence. But the point is, she wasn't deprived of her constitutional right to due process. She had a hearing on the merits. She was entitled to present whatever evidence she wanted to present. She was entitled to present whatever argument she wanted to present about these reports of Mr. Boyle being falsified or incorrect. And she tried to do that. And then she abandoned the proceedings. So where is the deprivation of constitutional rights because of something Mr. Boyle did? She wasn't deprived of her rights to a hearing on the merits. She had hearings on the merits. And then for her own reasons, I'm not really sure why, she abandoned those proceedings and gave up. So there simply is no deprivation of constitutional rights here, due process, caused by anything Mr. Boyle is alleged to have wrongfully done. So I think you can uphold the dismissal upon that basis as well. The other basis you can uphold the dismissal is the common law privilege of witnesses who testify during court proceedings. And that's in essence what we have Mr. Boyle doing here. His reports went into evidence in the court proceedings in front of the juvenile court. So it's just the same as if he had come into court and testified as to what was in the reports. So because of the common law privilege, he is protected or is immune from being sued because of some testimony he gave in court. If that weren't the case, then any time a witness came into court and testified and presented evidence and the other side claimed, well, you falsified that testimony or that evidence, then they could turn around and sue them in another proceeding like this. And that's not allowed. I'm not sure that's relevant to what we're considering. But do you have any case which says that other than for actual testimony in court, there is a privilege? Other than actual testimony? Yeah. No, I don't believe we cited any other ones in our report. No, I don't know of any case either. But again, I believe that the presentation of the reports is akin to testifying, just as if he came in and testified to exactly what was in the report. And then running out of time, last basis is one year statute of limitation. She was not allowed to regain custody of her children as of January of 2000, when there was this court hearing. Didn't file this out until October 2001. That's more than one year. Well, there's a continuing deprivation, according to her. But the injury, the initial injury of not being allowed to regain custody took place in January 2000. You don't think there's a continuing injury? Once you're injured, you're injured, okay? And there's no evidence that there's some new injury. They're saying there's a continual act. I don't think there's new injuries. The injury happened, if it happened at all, in January of 2000. Thank you. All right, Ms. Berry? Thank you. I'm going to walk my way backwards. The, his argument about the testimonial privilege does not fly. We were using, we never claimed perjury, as far as we know he was telling the truth. And we were getting places with the hearing, and we were happy to hear what he was saying, because we felt it bolstered our case. What we're talking about is the falsification of reports. And clearly, in using a functional analysis, we go to Kalina versus Fletcher, where an affidavit sworn by Ms. Kalina, the prosecutor, was held to be actionable because she made false statements under oath. And the court said that that was not the function of a prosecutor, that was the function of a witness. And even a sworn declaration that she presented to the court, when she presented, I guess it was an information as opposed to an indictment. The, there was a continuing deprivation. Mr. Boyle misses the point of juvenile court. You've already lost your children, you're working to regain. It's not like family court, where you have your kids, and then you could stand to lose them with a custody order. So yes, I mean, once she lost her kids, she immediately went to work. She knew what she had to do. She fulfilled the terms of the reunification plan. Your Honor, in my, sorry. I go on to some length in paragraph 74, 75, 76, 77, about some of the falsification, the false reports at pages 22 and 23 of my volume one of my. All right, thank you very much. All right, thank you, counsel. A matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber